*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

FILED
APR 30 2009
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 08-36209-D-13L |
| KHAMMANY NADONE and<br>NALY PHONHLAMOUNGDY,<br><br>                  Debtors. | Docket Control No. SS-2<br><br>Date:    April 21, 2009<br>Time:    1:00 p.m.<br>Dept:    D |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

## MEMORANDUM DECISION

On February 26, 2009, the debtors herein, Khammany Nadone and Naly Phonhlamoungdy ("the debtors"), filed a Motion to Confirm Amended Plan, bearing Docket Control No. SS-2 ("the Motion"), by which the debtors seek confirmation of their First Amended Chapter 13 Plan ("the plan"), filed the same day. Secured and unsecured creditor The Golden 1 Credit Union ("the Credit Union") opposes the Motion. For the reasons set forth below, the court will deny the Motion.

## I. INTRODUCTION

In the plan, the debtors propose to pay $3,334.06 per month for 36 months, which will yield nothing for general unsecured creditors. Because the plan does not propose a 100% dividend to unsecured creditors, and because the Credit Union, as the holder of an unsecured claim, has objected, the plan must provide that all the debtors' projected disposable income to be received during the applicable commitment period will be applied to make

payments to unsecured creditors under the plan. 11 U.S.C. § 1325(b)(1).[1]

The issue is whether the debtors have projected disposable income, as defined in § 1325(b)(2), such that they may obtain confirmation only if their plan proposes an applicable commitment period of five years, under § 1325(b)(4). If the debtors do not have projected disposable income, the "applicable commitment period" will not apply to them, and a three-year plan may be confirmed, despite the fact that the debtors, by their own admission, are above-median income debtors. <u>Maney v. Kagenveama (In re Kagenveama)</u>, 541 F.3d 868, 875 (9th Cir. 2008).

## II. ANALYSIS

The answer derives from an analysis of the debtors' Amended Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, Form B22C, filed February 26, 2009 ("Amended Form B22C" or "B22C"). The Credit Union contends that the debtors have used inappropriate figures in the B22C, and that when the figures are corrected, the debtors have disposable income, and thus, must propose a five-year plan.

<u>A. The Deduction for Taxes</u>

The Credit Union contends the debtors' deduction for taxes, on line 30 of the B22C, $1,280, should instead be $133.67, which would result in a positive monthly disposable income.

The Credit Union's figures are based on the debtors' actual "total tax," as shown on their 2007 federal and state income tax

---

1. Unless otherwise indicated, all Code, chapter, section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

- 2 -

returns.  However, those returns do not reflect deductions from the debtors' income for social security taxes, Medicare taxes, and state disability insurance ("SDI").  These latter deductions are appropriate for inclusion on line 30, along with income tax deductions.

The debtors have submitted their 2008 federal and state income tax returns (without attachments) and a group of employer pay advices.  The debtors' income tax liability, state and federal, using the figures in the tax returns, totals $6,429, or an average of $536 per month.

The debtors' pay advices for their primary jobs reflect their year-to-date deductions for social security taxes, Medicare taxes, and SDI through roughly the end of October; their pay advices for their second jobs run through October 11 and October 19, respectively.  Using a divisor of 10 for the primary jobs, and divisors of 9-1/3 and 9-2/3, respectively, for the second jobs, the averages for the debtors' social security tax, Medicare tax, and SDI deductions total $714 per month.  Thus, the grand total of deductions for all taxes -- state and federal income taxes, social security taxes, Medicare taxes, and SDI -- is an average of $1,250 per month, just $30 less than the figure the debtors used.[2]

B. The Increased Household Size

The Credit Union's second argument carries more weight.  In the Amended Form B22C, the debtors list their household size as

---

2.  Using the pay advices rather than the tax returns for the state and federal income tax deductions results in an average of $1,245 per month for all these deductions.

- 3 -

eight, whereas in an earlier version, filed with the petition on November 5, 2008, they had reported a household size of six. According to the debtors' I-schedule, the household is comprised of the debtors and their four children. The household of eight, as listed on the Amended Form B22C, includes the parents of debtor Naly Phonhlamoungdy, who reside with the debtors and their children.

As a result of this change, the Amended Form B22C lists expense deductions on lines 24A and 24B based on the national standards for a household of eight rather than six. These deductions are higher by a total of $638 than the deductions on the debtors' original Form B22C. The Amended Form B22C does not report the parents' income.

This change raises two concerns -- first, that the debtors changed the reported size of the household after the Credit Union objected to their original chapter 13 plan,[3] and second, that the debtors are using the increased household size as a means of increasing their expenses without at the same time including the parents' income as household income.

As a result of the Credit Union's objection to their original plan, the debtors reduced some of the expenses on their Form B22C -- those on lines 31, 44, 47, 50.[4] These reductions would have resulted in a positive monthly disposable income, which would have required a five-year plan. Thus, it appears the

---

3. The Credit Union's objection was overruled as moot, the chapter 13 trustee's separate objection having been sustained.

4. For three of the four lines, the changes made by the debtors correspond exactly to the changes sought by the Credit Union; for the fourth, line 47, they correspond substantially.

- 4 -

debtors sought a way to increase other expenses; what they hit upon was increasing their reported household size so they could increase the deductions on lines 24A and 24B.

The court finds this strategy -- modification of original sworn testimony to meet a creditor objection -- to be too expedient. At their meeting of creditors, the debtors testified that the parents resided in the debtors' residence, but had their separate income and separate expenses.[5] This is consistent with the household size of six reported in the debtors' original Form B22C - the parents' income was not reported, but neither were they counted as household members for purposes of the expense deductions.[6] In both instances -- the original Form B22A and the meeting of creditors -- the debtors' testimony was given under penalty of perjury.

In their Amended Form B22C, in response to the Credit Union's objections, the debtors now report the increased household size for purposes of expenses only, but do not include the parents' income as a contribution to the household income. The difficulty with this tactic is that each time a party changes his or her story, absent a very good reason, the court attributes less credibility to the end product.

---

5. Declaration of Roxanne T. Daneri, filed March 24, 2009.

6. The debtors' original I-schedule, filed with their petition on November 5, 2008, is also consistent, in that they did not list the parents as their dependents, whereas in an amended I-schedule, filed at the same time as the Amended B22C, the parents are listed as dependents.

The debtors' tax returns are consistent with their original position -- they do not list the parents as dependents. See 2008 federal and state income tax returns, filed April 14, 2009.

The debtors defend their strategy on the basis that the parents' only income is social security income, which is not to be included in the Form B22C. Under § 101(10A), "current monthly income" (which is the starting point for determining disposable income under § 1325(b)(2)) includes amounts paid by persons or entities other than the debtors, on a regular basis, for the household expenses of the debtor and his or her dependents, and excludes benefits received under the Social Security Act.

The former -- amounts contributed by third parties -- are to be listed on line 7 of the Form B22C. There is no indication in the Code or the official form of an exclusion of any particular type of income received by the third party and then contributed to the household. Thus, in this case, to the extent the parents were to be considered as members of the household, for purposes of computing the debtors' expense deductions, their contributions to the household income should also have been included, on line 7. In other words, as to the third party, the income may be Social Security benefits, but as to the debtors, it is not; it is nothing more nor less than contributions from a third party.

The only evidence offered by the debtors in response to the Credit Union's present objection is this: "[Naly's parents] did not make regular contributions to household expenses during the six-month period prior to [the filing]."[7] However, the Credit Union's records show that $762 "from the US Treasury 310 (Supp Sec)" was deposited each month into an account on which debtor Naly Phonhlamoungdy was the primary account holder and her mother

---

7. Debtors' declaration, filed April 14, 2009.

was the joint account holder. The funds were then withdrawn and some were placed in other accounts of the debtors from which household expenses were paid.[8]

The debtors have offered no response to this evidence, other than the conclusion that the parents did not make regular contributions to the household expenses. They have not explained where the $762 went each month after it was deposited or shown that the majority of the funds did not go to household expenses.

Virtually all the debtors' testimony and documents filed prior to the present objection are consistent with the conclusion that the parents' income and expenses were treated as separate from the debtors'. Thus, an Amended Form B22C, filed only in response to that objection, that includes the parents as household members for purposes of the expense deductions, but excludes their income from household income, is given little, if any, weight.

Returning the household size to its original six, the expenses on lines 24A and 24B drop from $2,418 and $456 back to their amounts on the original Form B22C, $1,894 and $342, for a total reduction in expenses of $638. Adding this amount to the monthly disposable income shown on the Amended Form B22C, <$553.24>, results in a positive number for disposable income. As the debtors have disposable income, their proposed three-year plan cannot be confirmed.

/ / /

/ / /

---

8. Declaration of Roxanne T. Daneri, filed March 24, 2009.

### III. CONCLUSION

For the foregoing reasons, the debtors' motion to confirm their first amended plan will be denied. It is unnecessary at this time for the court to decide any other issues raised by the Credit Union, such as the amounts deducted for the debtors' car payments.

The court will issue an appropriate order.

Dated: April 30, 2009

                                         /s/ Robert Bardwil
                                         ROBERT S. BARDWIL
                                         United States Bankruptcy Judge

## CERTIFICATE OF MAILING

I, Andrea Lovgren, in the performance of my duties as Deputy Clerk to the Honorable Robert S. Bardwil, mailed by ordinary mail a true copy of the attached document to each of the parties listed below:

Office of the United States Trustee
501 "I" Street, Suite 7-500
Sacramento, CA 95814

Lawrence Loheit
P.O. Box 1858
Sacramento, CA 95812-1858

Khammany Nadone
Naly Phonhlamoungdy
7694 Roosterfish Way
Sacramento, CA 95828

Roxanne Daneri
555 University Avenue, Suite 114
Sacramento, CA 95825

DATE: 4/30/09

_____
Deputy Clerk